Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES A. SIMON,  **)** | |
| **)** | |
| Plaintiff,  **)** | |
| **)** | |
| v.  **)** | |
| **)** | Civil Action No. 16-0671 (APM) |
| U.S. DEPARTMENT OF JUSTICE,  **)** | |
| EXCUTIVE OFFICE FOR UNITED  **)** | |
| STATES ATTORNEYS,  **)** | |
| **)** | |
| Defendant.  **)** | |
| **)** | |

**DECLARATION OF KEVIN CUMMISKEY**

I, KEVIN E. CUMMISKEY, pursuant to the provisions of 28 U.S.C. § 1746(2) declare as

follows:

<u>Background</u>

1.       I am an attorney in Branch 7 within the Office of Associate Chief Counsel for

Procedure & Administration (P&A), a national office practice group within the Internal Revenue

Service's Office of Chief Counsel in Washington, D.C. I have been employed by the Internal

Revenue Service (IRS or Service) since 2018. As part of my official duties, I am responsible for

assisting the Department of Justice (DOJ) with the Service's views on defending against claims

made pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA). These duties require

that I have knowledge of the procedures and requirements for making FOIA requests.

2.       In the course of processing records responsive to FOIA requests, it is not

uncommon for agencies to locate records which either originated with another agency or which

contain information that is of interest to another agency. In this situation, it is appropriate to

consult with the other agency that has equity in the document to get its views on the sensitivity of the document's content prior to making a disclosure determination. See "Referrals, Consultations, and Coordination: Procedures for Processing Records When Another Agency or Entity Has an Interest in Them," Office of Information Policy, U.S. Department of Justice, www.justice.gov/oip/blog/referrals-consultations-and-coordination-procedures-processing-records-when-another-agency (updated July 26, 2021).

3.      As part of the above captioned litigation, the IRS Office of Chief Counsel (Chief Counsel) was contacted by David Luczynski, an attorney with the Executive Office of the United States Attorney's (EOUSA) office around January 2018. Mr. Luczynski identified certain records in processing the FOIA complaint at issue in this litigation that contained IRS equities. Accordingly, Mr. Luczynski consulted with Chief Counsel to obtain our views on potential redactions that apply to the records containing IRS equities.

4.      Mr. Luczynski provided a copy of the complaint at issue in this case on August 31, 2020. The complaint indicates that the FOIA request at issue was dated June 15, 2015. The requested records pertain to the criminal investigation into the requester which resulted in a jury finding James Simon [Plaintiff or requester] guilty of criminal conduct in November 2010. United States v. Simon, No. 3:14-CV-2025-RLM, 2016 WL 3597579, at *1 (N.D. Ind. July 5, 2016). Mr. Simon pursued several appeals relating to this criminal conviction, with the most recent appeal before the Seventh Circuit being ruled on in March 2020. United States v. Simon, 952 F.3d 848, 850 (7th Cir. 2020).

5.      Chief Counsel assigned Han Huang, an attorney, to assist in the consultation on January 18, 2018. I took over the case from Han Huang on September 13, 2019.

6.      On April 10, 2024, Mr. Luczynski requested I provide a <u>Vaughn</u> index to incorporate in a status report for the case. On May 20, 2024, I provided a <u>Vaughn</u> index to Mr. Luczynski summarizing the documents reviewed by the Service for this case in consultation with the EOUSA. The <u>Vaughn</u> index identified the number of pages reviewed by the Service, the pages withheld in full, the pages withheld in part, and the number of pages released in full. For the pages withheld in full or in part, the index identified the relevant FOIA provision and a brief description of the document to show why the exemption applied to the document.

7.      On February 18, 2025, Mr. Luczynski advised that plaintiff challenged some items on the <u>Vaughn</u> index provided in May 2024. Mr. Luczynski requested that I draft this declaration to provide additional information about the redactions identified by plaintiff.

8.      Plaintiff identified twenty-eight (28) rows of the <u>Vaughn</u> index to be addressed in this declaration. Sixteen (16) identified rows were for pages withheld in full under various FOIA exemptions. Twelve (12) rows identified pages that were determined to be non-responsive to the responsive query at issue.

9.      In accordance with the segregation requirement of subsection (b) of the FOIA, I have reviewed all potentially responsive records provided by Mr. Luczynski to identify records actually responsive to the FOIA requests and to ensure that exempt material has been withheld and that non-exempt material has been provided to the Department of Justice for delivery to plaintiffs. I performed a line-by-line review of the records sent to the Service in consultation for the above captioned litigation. I reviewed all records at issue in this litigation and attempted to make every reasonably segregable non-exempt portion of every responsive record available to plaintiffs. The Service withholds in entirety only those records that fall within a FOIA exemption

in their entirety, or those records wherein the portions exempt from disclosure under the FOIA

are so inextricably intertwined with nonexempt material as to be impracticable to segregate.

Records Exempt from Disclosure

10.     Sixteen (16) rows identified by plaintiff reflect items that were withheld from

production under various FOIA exemptions. I have personally reviewed the records responsive

to plaintiffs' FOIA requests for which the Service has claimed exemption from FOIA pursuant to

exemptions (b)(3), (b)(5), (b)(7)(D), and (b)(7)(E). Exemption (b)(3) provides that records that

are specifically exempt from disclosure by statute are exempt from production under FOIA.

Exemption (b)(5) provides that "inter-agency or intra-agency memorandums or letters that

would not be available by law to a party other than an agency in litigation with the agency" are

exempt from disclosure. Exemption (b)(5) includes litigation privileges such as work-product

privilege, attorney-client privilege, and the deliberative process privilege. Exemption (b)(7)(D)

exempts from disclosure law enforcement records that could reasonably be expected to

disclose the identity of a confidential source. Exemption (b)(7)(E) provides that law

enforcement records that would disclose techniques and procedures for law enforcement

investigations or prosecutions, or would disclose guidelines for law enforcement investigations

or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law

are exempt from disclosure.

11.     This declaration is based on my personal knowledge and review of the

responsive records for which the aforementioned FOIA exemptions are being claimed.   I am

also aware of the segregation requirement of subsection (b) of the FOIA for any nonexempt

information contained in responsive agency records.

12.     The sixteen (16) rows identified by Plaintiff in the Vaughn index that referenced documents that were withheld under FOIA exemptions are identified on the index by document titles: (1) "00011615 27pg IRS"; (2) "Doc 4351 44pg IRS"; (3) "Simon referral Part 1"; (4) Simon referral Part 2"; and "Simon Han review Redacted F17187-0081."

13.     Document "00011615 27pg IRS" contained twenty-seven (27) responsive pages. Document "00011615 27pg IRS" contains twenty-one pages of memoranda between trial attorneys in the Assistant United States Attorney's (AUSA) Office for the Northern District of Indiana, supervisory attorneys in the AUSA office for the Northern District of Indiana, and IRS Special Agents assigned to the grand jury investigation. These memoranda discuss preliminary factual findings in determining whether to pursue criminal charges, potential criminal violations based on the factual development preceding the grand jury investigation, and initial recommendations on whether to pursue a grand jury investigation into James Simon. There are also six pages of notes reflecting factual findings developed and attached to the memoranda as support for the grand jury investigation recommendation. These memoranda contain referrals from special agents to attorneys to determine, in the attorney's legal opinion, whether a grand jury investigation was warranted based on facts developed during the preliminary investigation. These documents also contain deliberations of IRS Special Agents and lower-level trial attorneys on the prospective merits of a potential grand jury investigation and whether to pursue a grand jury investigation. These twenty-seven (27) pages were withheld under exemption (b)(5), as the pages are protected by attorney-client privilege as they are communications from Special Agents to criminal attorneys seeking their legal advice. These pages also contain deliberations on whether to engage in a grand jury investigation making them privileged under the

deliberative process privilege. The factual material developed in support of these deliberations are intertwined with the analysis that would not permit segregating factual from deliberative material. The memoranda between trial attorneys and their supervisors also reflect work-product on potential theories in a grand jury investigation. While not identified in the <u>Vaughn</u> index, these records should be withheld under exemption (b)(7)(E). Further, the factual development in the memoranda and the factual findings would disclose why and how Simon was identified for potential criminal investigation. The factual information summarized in these memoranda would disclose law enforcement techniques, in that the facts identified had led to the Special Agent to suggest pursuing a grand jury investigation. There is also some discussion on how these facts were obtained, which would disclose law enforcement techniques and approaches Special Agents use in their investigations. Disclosure of these facts would lead to a circumvention of law enforcement by alerting the public to certain behavior that would flag the IRS to potential criminal inquiry. The memoranda are withheld under exemption (b)(7)(E).

14.    Document "Doc 4351 44pg IRS" contained forty-four (44) pages of responsive pages. These records were withheld in full under exemption (b)(3) in conjunction with I.R.C. § 6103(e)(7) and 31 U.S.C. § 5319. Under I.R.C. § 6103(b)(2), return information is defined to include, "any other data, received by … furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability … of any person under this title for any tax, … or offense." In general, an individual's return is subject to disclosure to that individual. I.R.C. § 6103(e)(1)(A). However, return information with respect to any taxpayer may be open to disclosure to any person authorized by section I.R.C. § 6103(e) if the Secretary determines such disclosure would not seriously

impair Federal tax administration. I.R.C. § 6103(e)(7). The forty-four (44) pages in document "Doc 4651 44pg IRS" contained Bank Secrecy Act reports. Bank Secrecy Act reports are exempt from FOIA under 31 U.S.C. § 5319: "a report and records of reports are exempt from search and disclosure under section 552 of title 5." The regulations further detail that a "SAR [a Bank Secrecy Act report], and any information that would reveal the existence of a SAR, are confidential and shall not be disclosed except as authorized in this paragraph." 31 C.F.R. § 1020.320(e). The regulations indicate that the Secretary has made the determination that the disclosure of Bank Secrecy Act reports would seriously impair administration of the Bank Secrecy Act and related statutes. As these reports were shared with the IRS for the purposes of determining potential liability under the Internal Revenue Code, these reports are "return information" under I.R.C. § 6103(b)(2). Disclosure of these reports would impair Federal tax administration. These reports are, therefore, not subject to disclosure pursuant to I.R.C. § 6103(e)(7). These reports are subject to exemption 3 based on both I.R.C. § 6103(e)(7) and 31 U.S.C. § 5319.

15.    Document "Simon referral Part 1" contained one hundred eighteen (118) pages of responsive records. Plaintiff challenges the withholding in full of ninety-seven (97) of those pages.

a. Thirty-six (36) of these pages are marked with a header reading, "CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R. CRIM.P." These thirty-six (36) pages should be withheld in full under exemption (b)(3) in conjunction with Federal Rules of Criminal Procedure 6(e). These pages also compile the facts and analysis

developed by the IRS Special Agent as part of this criminal investigation. The facts, application to law, and recommendations from the Special Agent are addressed to an AUSA attorney for prosecution of the case. These documents, as they relate to information from a client (i.e., the IRS) to an attorney, are protected by the attorney-client privilege. These documents are withheld in full under exemption (b)(5) in conjunction with the attorney client privilege.

b.  Nine pages consist of a memorandum from an IRS criminal tax attorney to an IRS special agent in charge. A heading across the front-page reads, "CAUTION CONTAINS GRAND JURY INFORMATION." This memorandum should be withheld in full under exemption (b)(3) in conjunction with Federal Rules of Criminal Procedure 6(e). This document, as it provides legal analysis from a Criminal Tax attorney in response to a request from a Special Agent on the application of certain criminal charges based on facts identified and provided by the Special Agent, is also subject to the attorney-client privilege. This document should be withheld in full under exemption (b)(5) in conjunction with the attorney-client privilege.

c.  Forty-seven (47) pages consist of a draft memorandum and exhibits from a Special Agent to a Supervisory Special Agent. This memorandum contains recommended charges and prosecution years, considerations in bringing criminal charges including statutes of limitations, elements of potentially applicable criminal charges, and facts (as detailed in attached exhibits) that may apply to the elements. This document was prepared by a Special Agent for their

supervisor on whether to pursue criminal charges and which charges were

applicable based on factual development. This document is not signed by the

supervisory Special Agent, so it is pre-decisional. As this memorandum includes

considerations on whether to pursue criminal charges, it is deliberative. The

factual material in support of these deliberations are intertwined with the

analysis that would not permit segregation of factual from deliberative material.

This document was withheld under exemption (b)(5) and the deliberative

process privilege.

d. Five pages consist of a letter from an AUSA to an IRS Special Agent in response to

a letter recommending the AUSA office commence a grand jury investigation.

This letter, as it relates to an attorney's legal impressions in their representation

of the IRS based on recommendations made by an IRS Special Agent (i.e., a

client), is privileged under the attorney-client privilege. This document is

withheld under exemption (b)(5) in conjunction with the attorney-client

privilege.

e. Each of the ninety-seven (97) pages identified by plaintiff contain facts

developed as part of the criminal investigation, including how the factual

material was developed and obtained as part of the criminal investigation.

Disclosure of these facts, along with how the information was obtained, would

reasonably be expected to risk circumvention of the law, as it would disclose

techniques used by the IRS Special Agents to obtain criminal evidence. Further,

these factual recitations would disclose what information would warrant an

investigation and recommendation of empaneling a grand jury. The disclosure of

what information the Service considers when determining to pursue criminal

charges would reasonably lead to potential circumvention of the law. These

ninety-seven (97) pages were, therefore, withheld under exemption (b)(7)(E).

16.    Document "Simon referral Part 2" consists of ninety-two (92) pages of

responsive records. Plaintiff challenges the withholding of forty-six (46) pages.

    a.    Bates numbers 9197-9198 of "Simon referral Part 2" consists of a two-page

declaration from an IRS Special Agent describing the basis and need for a search

warrant to be executed. The material describes the factual basis warranting a

search warrant. This information is withheld under exemption (b)(7)(E), as

disclosure of facts warranting a search warrant and methods the Service uses in

obtaining information for use in a criminal investigation risks a circumvention of

law.

    b.    Bates number 9215 of "Simon referral Part 2" consists of a one-page statement

from a witness to an IRS Special Agent. The statement indicates that the witness

will continue to provide information to the Special Agent on certain activities he

observes. IRS relies on individuals to provide information about potential

criminal (i.e., IRS Special Agents) and civil (i.e., the IRS Whistleblower office)

violations of the Tax Code. The IRS has recognized the need for informants to

feel confident that their identities will be protected when providing information

to the IRS. See Treas. Reg. § 301.7623-1(e) ("Under the informant's privilege, the

IRS will use its best efforts to protect the identity of whistleblowers."). While not

every informant may obtain an express assurance of confidentiality from the IRS, some may provide information under an implied assurance of confidentiality. Whether there is an express or implied assurance of confidentiality, these sources are considered to be confidential because they furnish information only with the understanding that their identities and the information they provided will not be divulged outside the IRS.    Information provided by these sources is singular in nature, such that it is often distinct and traceable to a specific individual and if released, could reveal their identities.    The IRS has learned through experience that sources assisting, cooperating with, and providing information to the IRS must be free to do so without fear of reprisal.    The IRS has also learned that sources must be free to furnish information to the IRS with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the IRS will later be made public.    Sources providing information to the IRS should be secure in the knowledge that their assistance and their identities will be held in confidence.    The release of a source's identity would forever eliminate that source as a future means of obtaining information.    In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources.    Such a result undermines one of the IRS's most important means of collecting information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws. The information is withheld

under (b)(7)(D), as the statement identifies the identity of an informant in the investigation. The information conveyed in the memorandum suggests the informant obtained this information due to his relationship with Simon. The informant's offer to continue to obtain and provide information to IRS Special Agents suggests an assurance that his participation in this investigation would be kept confidential. This information is withheld under exemption (b)(7)(E), as disclosure of the information would disclose techniques the IRS uses in developing and working with informants.

c.  Bates numbers 9219-9229 of "Simon referral Part 2" consists of eleven (11) pages of an unsigned memorandum evaluating proposed criminal charges. The memorandum sets forth potential criminal charges, legal theories behind each charge, facts applying to the elements of each crime, and initial recommendations on which charges to pursue. This document is not signed, so it is pre-decisional as there is no indication the recommendations were adopted by the author's superiors. The document describes strengths and weaknesses associated with each charge and potential defenses, so it is deliberative. The factual material in support of these deliberations are intertwined with the analysis that would not permit segregation of factual from deliberative material. The document was withheld under (b)(5) and the deliberative process privilege. The document is also drafted by a trial attorney for her supervisors on developing a criminal case, so this information is also exempt under (b)(5) and the work-product privilege. The document also identifies informants as part of

the investigation, so it is exempt under (b)(7)(D). Finally, the factual recitation

identifies information and methods used by IRS agents in developing the facts of

the case. The disclosure of this information could lead to a circumvention of

federal tax laws. Therefore, the material is also exempt under (b)(7)(E).

d.  Bates numbers 9231-9241 of "Simon referral Part 2" consists of another draft of

the memorandum identified in ¶ 16(c) above. The document is withheld for the

same reasons identified in ¶ 16(c).

e.  Bates number 9244 of "Simon referral Part 2" consists of a one-page email from

an IRS Special Agent to an attorney for the AUSA office for the Northern District

of Indiana. The email discloses the application of law to the criminal

investigation. The information is withheld under exemption (b)(5) under the

attorney-client privilege.

f.  Bates numbers 9246-9247 of "Simon referral Part 2" contains a two-page email

discussing the scope and direction of the investigation along with potential

witnesses, and whether counsel representing individuals other than the witness

should be permitted to attend the interview. The information is withheld under

(b)(7)(D) as it discloses the identity of an informant. The information is withheld

under (b)(7)(E) as it discloses the methods and practices of IRS Special Agents in

developing a criminal case.

g.  Bates number 9255 of "Simon referral Part 2" is a one-page email between

attorneys for the AUSA office for the Northern District of Indiana. The email

discusses a proposed filing in a court case. The information is withheld under

(b)(5) in conjunction with the attorney work product privilege and the deliberative process privilege. The factual material in support of these deliberations are intertwined with the analysis that would not permit segregation of factual from deliberative material.

h.   Bates number 9257 of "Simon referral Part 2" is a one-page email between attorneys for DOJ Tax Division and the AUSA office for the Northern District of Indiana. The email discusses the factual development and requirements necessary to obtain a search warrant. The email is withheld under exemption (b)(5) in conjunction with the deliberative process privilege, the work product privilege, and the attorney-client privilege as it relates to the development of legal advice for the IRS Special Agent. The factual material in support of these deliberations are intertwined with the analysis that would not permit segregation of factual from deliberative material.

i.   Bates numbers 11626-11641 of "Simon referral Part 2" is comprised of three memoranda containing sixteen (16) pages of responsive records.

   i.   The first memorandum consists of eight pages (bates numbers 11626-11633). The memorandum is between an IRS Special Agent and a supervisory special agent discussing the Simon case. The memo describes the development of the investigation, preliminary findings, and proposed courses of action for the case. The memorandum also contains in depth factual findings supporting the Special Agent's proposed actions on the case. The factual findings describe how the information was obtained for

furtherance of the investigation. This memorandum is withheld under exemption (b)(5) as the document is pre-decisional and deliberative. The factual material in support of these deliberations are intertwined with the analysis that would not permit segregation of factual from deliberative material.    This document is also withheld under exemption (b)(7)(E) as the factual material developed would disclose the Service's investigatory techniques and relevant decision points on when to pursue criminal indictments.

ii.  The next memorandum is six pages (bates numbers 11634-11639). The memorandum is from an IRS Criminal Investigation attorney to a Supervisory Special Agent involving the Simon investigation. The memorandum discusses the merits of the case, whether to pursue criminal charges, application of facts to law, and the attorney's recommended conclusion based on their legal analysis. The memorandum is exempt from disclosure under exemption (b)(5) in conjunction with the attorney-client privilege as it is an attorney providing their legal advice in response to facts provided by the client.

iii. The third memorandum is two pages (bates 11640-11641). This memorandum is from a supervisory special agent to a DOJ attorney. The memorandum contains the client's suggested course of action in the Simon investigation. As the letter is from a client to an attorney for the

purposes of obtaining legal advice, it is exempt under exemption (b)(5) in conjunction with the attorney-client privilege.

17. Document "Simon Han review Redacted F17187-0081" consists of five hundred and three (503) responsive pages. Fifty-eight (58) pages were withheld in full. The remaining four hundred forty-five (445) pages were produced in full.

   a. Pages one through fifty-three (53) contain a summary of facts developed during the investigation, with the exception of two cover pages which were produced in full. These documents contain suggested criminal charges, applications of facts to law, and information developed as part of the investigation. The document was created for a Special Agent's supervisor on whether to proceed with the investigation. The fact section identifies informants used to develop information. The fact section also discusses the methods the Special Agent used to develop the factual material. The factual material in support of these deliberations are intertwined with the analysis that would not permit segregation of factual from deliberative material. These pages are exempt from disclosure under (b)(5) in conjunction with the deliberative process privilege. Exemption (b)(7)(D) applies to protect the identity of informants identified. The information is exempt under (b)(7)(E) as the discussion of investigative techniques would lead to the potential circumvention of law.

   b. Pages fifty-four (54) through one hundred thirty-three (133) were produced in full.

    c.  Pages one hundred thirty-five (135) through one hundred forty-three (143) contain nine pages of responsive records. Seven pages were withheld in full and two were produced in full.

        i.  Four of these pages are identical to the records described in ¶ 16(b), 16(e), and 16(f). They are withheld for the same reasons identified above.

        ii.  Three pages are emails from an IRS Special Agent to attorneys with the AUSA office for the Northern District of Indiana providing factual material for their use in developing their legal conclusions. These pages are withheld under exemption (b)(5) in conjunction with the attorney-client privilege, and the work product privilege.

    d.  Pages one hundred forty-three (143) to five hundred and three (503) were produced in full.

Non-Responsive Records

18. Plaintiff identified twelve (12) rows on the <u>Vaughn</u> index that were withheld in full as non-responsive.

19. On August 31, 2020, Mr. Luczynski sent me a revised search inquiry list from Plaintiff narrowing the scope of the FOIA requests at issue. Mr. Luczynski advised that the parties agreed to review and produce records in response to each query sequentially. As part of that agreement, plaintiff's counsel directs Mr. Luczynski which query to search for. Mr. Luczynski would then perform a search using certain key words used to identify potentially responsive information. Mr. Luczynski would then provide any records produced through the use of search terms that contained IRS equities to Chief Counsel

for consultation. However, there was no page-by-page review to ensure the information was responsive to the search query prior to the consultation sent to IRS. Mr. Luczynski advised that the EOUSA office was not performing any responsiveness review of the records prior to consulting with the IRS. I was directed as part of my review for FOIA exemptions to also identify whether the records were responsive to the relevant search query identified by plaintiff. Mr. Luczynski advised that future consultations would be forthcoming.

20. Between July and September 2020, I received nine batches of documents from Mr. Luczynski: (1) document "00031079 212 pg IRS"; (2) document "00034280_Part1 150 pg IRS"; (3) document "00034280_Part2 150 pg IRS"; (4) document "00034280_Part3 150 pg IRS"; (5) document "00034280_Part4 150 pg IRS"; (6) document "00034280_Part5 150 pg IRS"; (7) document "00034280_Part6 150 pg IRS"; (8) document "00034280_Part7 150 pg IRS"; and (9) document "00034280_Part8 3 IRS". These batches contained one thousand two hundred and sixty-five (1,265) pages of records.

21. Mr. Luczynski advised on September 15, 2020, that the relevant search inquiry for determining responsiveness for the documents described in ¶ 20 was query 3 on the revised search criteria memo: "All records created between 1995-2015, inclusive, which discuss questions of tax harm, including, but not limited to, the existence or nonexistence thereof and/or the effect that payments made by JAS Partners to Simon would have on his tax liability." I interpreted that search query to be for records generated by the IRS (i.e., "created"), such as emails, memoranda, and other

correspondence by IRS personnel, which provided some analysis (i.e., "discuss questions") on potential tax or criminal liability for Mr. Simon.

22. Upon review of the one thousand two hundred and sixty-five (1,265) pages of records, there were no records that were responsive to query 3. The records described in ¶ 20 consisted exclusively of material obtained as part of the investigation without any records created by the Service, nor any documents that provided any analysis of Mr. Simon's tax harm or tax liability.

   a. Document "00031079 212 pg IRS" contains promotional material for Culver Academies, federal student aid applications and information, bank deposit slips, correspondence to investors of JS Elekta, and tax transcripts for Plaintiff summarizing tax return filing history.

   b. Document "00034280_Part1 150 pg IRS" contains bank and credit card statements and billing statements for various services provided to James or Denise Simon.

   c. Document "00034280_Part2 150 pg IRS" contains bank and credit card statements and billing statements for various services provided to James or Denise Simon.

   d. Document "00034280_Part3 150 pg IRS" contains bank and credit card statements and billing statements for various services provided to James or Denise Simon.

   e. Document "00034280_Part4 150 pg IRS" contains billing statements for various services provided to James or Denise Simon.

f.  Document "00034280_Part5 150 pg IRS" contains bank and credit card statements and billing statements for various services provided to James or Denise Simon. There are also promotional materials for Canterbury School.

g.  Document "00034280_Part6 150 pg IRS" contains bank and credit card statements and billing statements for various services provided to James or Denise Simon.

h.  Document "00034280_Part7 150 pg IRS" contains bank and credit card statements and billing statements for various services provided to James or Denise Simon.

i.  Document "00034280_Part8 3 IRS" contains billing statements for various services provided to James or Denise Simon.

23.   None of these records described in ¶ 20 were "created" by the IRS (with the exception

of tax transcripts), contain any "discuss[ions] of tax harm," nor any information about

any "payments made by JAS Partners to Simon." Therefore, I determined the records

were not responsive to Query 3. These one thousand two hundred and sixty-five (1,265)

pages of records were withheld as non-responsive to the narrowed search terms at

issue in this litigation.


I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true

and correct.

Executed on April 8, 2025, in Washington, DC.

Kevin E. Cummiskey

Digitally signed by
Kevin E. Cummiskey
Date: 2025.04.08
16:47:31 -04'00'

_____

KEVIN E. CUMMISKEY
Office of Chief Counsel
Procedure and Administration
Internal Revenue Service